**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In Re:

Ryerson Brothers Excavating, LLC,

Debtor.
_______________________________/

Case No: 26-03614
Chapter 11, Subchapter V
Hon. Scott W. Dales
Filed On: November 20, 2026

**DECLARATION OF LEE MARCUS**

I, Lee Marcus, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the majority member and Chief Executive Officer of Ryerson Brothers Excavating, LLC. ("**Ryerson**" or "**Debtor**"). I hold 90% of Ryerson's membership shares. As the CEO, I focus on strategy and growth.

2. Jon J. Ryerson ("**Jon**") is a minority member and Project Manager. Jon holds 10% of Ryerson's membership shares. As a project manager, Jon manages projects and ensures safety in the field.

3. Leif Oquist, a non-member, is the Chief Operating Officer in charge of the day-to-day operations.

4. Dennis Dornbush ("**Dennis**") of Business Improvement Consulting, LLC ("**BIC**") is our financial advisor and accountant.

**Background**

5. On April 11, 2018, Ryerson was organized under the laws of Michigan by Jon and his brother Martin Ryerson ("**Martin**").

6. Both Jon and Martin grew up working for Ryerson Sewer Installer ("**Ryerson Sewer**"), a water, sewer, and septic company started by their father, Jon M. Ryerson, in 1980. Jon

and Martin worked various excavation and business administration jobs before returning to Michigan in 2018 to form Ryerson. Ryerson was formed to purchase the assets of Ryerson Sewer.

7. Jon and Martin expanded Ryerson's services and generally operated profitably from 2018 through May of 2024 when I purchased the majority ownership in Ryerson.

8. Upon purchasing the company, I implemented a strategic growth plan, which included increasing the number of four-person excavation crews from three to four.

9. Ryerson initially experienced substantial revenue growth following implementation of its strategic growth plan. Its annual gross revenues increased from approximately $2,000,000.00 in 2024 to approximately $3,710,618.00 in 2025.

10. As part of its continued strategic growth, in 2026, Ryerson launched a new division of the company, which operated under the name "Ryerson Utilities," to provide fiber optic conduit installation and directional drilling services.

11. The expansion into fiber optic conduit installation required Ryerson to invest in heavy equipment, including multiple Vermeer HDD rigs, and to employ four additional four-person crews. Purchasing the heavy equipment and paying the new employees was financed through a combination of approximately $1.7 million in new debt and profits generated by Ryerson's traditional excavation services.

12. Breaking into the fiber optic installation industry was more difficult than anticipated. Many of the telecom companies already had existing relationships with other installation companies, which forced Ryerson to obtain work as a subcontractor for the other installation companies rather than as the direct contractor.

13. The primary installation companies often retained the more profitable portions of an installation contract while subcontracting the less profitable portions of a contract to Ryerson.

14. After evaluating the financial performance of Ryerson Utilities, including its operating expenses, equipment financing obligations, and the profitability of available installation contracts, management determined that continuing the utility installation division was not financially sustainable. Accordingly, Ryerson made the business decision to discontinue its fiber optic installation operations and refocus its resources on its traditional excavation services.

15. Prior to filing its Bankruptcy Petition, Ryerson began returning fiber optic installation equipment to creditors holding purchase money security interests. A list of Debtor's equipment and vehicles, including vehicles returned pre-petition (which are highlighted in red), is attached as Exhibit A to Debtor's Bankruptcy Petition.

16. Ryerson's core excavation business remains viable. By eliminating the debt service and operational costs of the utility division and restructuring its liabilities for the excavation division, Ryerson can return to long term profitability.

17. The commencement of this Chapter 11 case is intended to preserve Ryerson as a going concern, maintain its workforce, protect its assets, and provide an opportunity to reorganize its financial obligations while continuing its excavation services.

18. Prior to commencing this Chapter 11, our counsel notified local counsel for Old National Bank (“**ONB**”), as the first priority all asset secured creditor, of its intent to file a Chapter 11 and began negotiations with ONB's local counsel to negotiate use of cash collateral.

**<u>Financial Condition</u>**

19. Ryerson manages its financial records using Quickbooks Online.

20. I oversee Ryerson's finances. However, the day-to-day entry of financial information into Quickbooks is completed by a part-time bookkeeper.

21. Through tax year 2025, Ryerson's year end financials and tax records were completed by Gunter Accounting.

22. Ryerson's 2026 year end financials and tax returns will be completed by Dennis and BIC.

23. Based on the initial financial reports and projections it appears that Ryerson will generate approximately $4.1 million through December 31, 2026. Approximately $3.4 million from excavation and approximately $700,000.00 from fiber optics.

24. I reviewed Ryerson's financial reports in anticipation of its bankruptcy filing and provided financial information and documentation to Ryerson's bankruptcy counsel to prepare its Bankruptcy Petition, Schedules, Statement of Financial Affairs, First Day Motions, and related pleadings.

25. The aggregate value of Ryerson's assets on the Petition Date, as disclosed on Schedule A/B of Debtor's Bankruptcy Petition, is approximately $2.6 million.

26. The aggregate amount of Ryerson's liabilities at the Petition Date, as disclosed on Schedules D and E/F of Debtor's Bankruptcy Petition, is approximately $5.759 million, which, based upon my understanding from Ryerson's bankruptcy counsel, is below the $7.5 million eligibility requirement for Subchapter V established by the Bankruptcy Threshold Adjustment Act.

27. Based upon my review of Ryerson's preliminary asset valuations, estimated secured indebtedness, and anticipated liquidation expenses, I believe that a liquidation of Ryerson's assets would likely result in substantially lower recoveries for creditors than a successful reorganization.

28. Ryerson's liabilities include aggregate secured debt to ONB of approximately $2.085 million. ONB's claims are comprised of two loans, which are secured by a mortgage

against Ryerson's real property and, except where preempted by purchase money security interests against specific equipment, a first position all asset UCC lien.

29. Based on the estimated liquidation value of Ryerson's assets, ONB's estimated secured claim, and the analysis completed by Ryerson's bankruptcy counsel, if Ryerson liquidated its assets, then, except where preempted by applicable purchase money security interests on specific assets, it appears that all proceeds from the sale of Ryerson's assets would be paid to ONB with all other creditors not receiving any distribution.

30. I worked with Dennis to produce a cash flow projection, which is attached to Ryerson's Motion for Cash Collateral as "Exhibit A."

31. Based on my experience managing Ryerson and my review of its financial records and cash flow projection, I believe that Ryerson's traditional excavating business provides a viable foundation for reorganization. Unlike the utility installation division, the excavation business has an established customer base, experienced employees, and operating history dating back to its formation.

32. Based upon the cash flow projections I prepared with Dennis, I believe that Ryerson will be able to maintain operations on a cash flow-neutral or cash flow positive basis during its Chapter 11 proceeding.

**<u>First Day Motions</u>**

33. I have reviewed the First Day Motions and affirm that the factual representations concerning Ryerson's operations and financial condition are accurate to the best of my knowledge.

34. I believe that the relief sought in each of the First Day Motions: (i) is necessary to enable Ryerson to operate in its Chapter 11 with minimum disruption of its operations while it seeks to reorganize; (ii) is necessary to protect its Estate from loss in value; (iii) constitutes critical

elements in achieving a successful restructuring process; and (iv) best serves its Estate and its creditors.

A. Cash Collateral Motion

35. Through its Cash Collateral Motion, Ryerson seeks Court approval to use cash collateral, including cash on hand, accounts, inventory, and receivables (“**Cash Collateral**”).

36. Ryerson has an immediate need for use of the Cash Collateral and will suffer irreparable harm if it is not immediately allowed to use Cash Collateral for operations, including, but not limited to, payment of utilities, insurance, employees, and vendors.

37. I’ve personally reviewed the Cash Flow Projections attached to the Motion for Cash Collateral. Based on my personal knowledge of Ryerson operations, I believe that the estimates included are reasonable and feasible.

38. Utilizing the Cash Collateral during its Chapter 11 proceeding will allow Ryerson to maintain its business operations while continually replenishing its Cash Collateral through its ongoing operations.

B. Employee Wages Motion

39. In the ordinary course of its operations, Ryerson incurs payroll obligations to its employees. Ryerson employs 19 employees; 12 hourly (paid weekly) and 7 salaried (1 paid weekly and 6 paid bi-weekly). Ryerson had 21 employees until November 19, 2026, at which time two employees were placed on seasonal winter layoff. Ryerson’s total number of employees includes two insiders – Jon and I.

40. Ryerson’s payroll is approximately $16,000.00 each Friday when only weekly employees are paid and approximately $29,000.00 on weeks when both weekly and bi-weekly employees are paid.

41. The amount of any pre-Petition compensation or benefits owed to an individual employee will not exceed $17,150.00 allowed as a priority claim under sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

42. All employee wages are current as of the Petition Date, provided however, that unpaid wages have accrued between the last payroll period and the Petition Date.

43. Ryerson also offers health insurance, but only one employee elected coverage.

44. Ryerson's employees rely on their employment income to pay necessary personal expenses. If Ryerson delays a payroll distribution or benefit, then many of its employees may immediately leave for what they view as more secure employment. Restaffing would be time-consuming and would result in substantial lost revenue.

C. Utility Motion

45. In the ordinary course of its operations, Ryerson incurs liabilities for utilities, including liabilities to Consumers Energy, DTE, Muskegon County Water & Sewer, Verizon Wireless, Comcast, AT&T, and Kuerth's Disposal.

46. All utilities are current as of the Petition Date; provided however, that utilities have accrued between the last invoice and the Petition Date.

## Conclusion

47. All the facts set forth in this declaration are based on: (i) my personal knowledge of Ryerson's operations; (ii) upon information supplied to me by others parties related to Ryerson history and operations; (iii) upon my review of relevant financial documents; (iv) my opinion based on my experience and knowledge of Ryerson operation and financial condition; and (v) my opinion based on information and analysis provided to me by professionals, such as accountants, financial advisors, and attorneys.

48. If I were called to testify, I could and would testify competently to the facts set forth herein.

I, Lee Marcus, declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Dated: 11/20/26

By: ______________________

Lee Marcus, as Majority member and CEO of Ryerson Brothers Excavating, LLC